UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAD S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C23-5341-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Plaintiff appeals the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by (1) giving too much weight to the opinions of reviewing state agency medical consultants Dr. Mark Magdaleno, M.D., and Dr. Gordon Hale, M.D., and too little weight to the opinion of examining physician Dr. Jonathan Ritson, M.D.; and (2) improperly rejecting plaintiff's symptom testimony; and he also contends (3) remand is necessary to consider evidence submitted to the Appeals Council. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 53 years old, has a high-school education, and has worked as a steel worker. Tr. 274, 278–79. On July 18, 2019, plaintiff was involved in a motorcycle collision that resulted in a broken pelvis, broken hip, and bladder repair. Tr. 274–75. He applied for benefits

later that month, alleging the date of the crash as the onset of disability. Tr. 273. His applications were denied initially and on reconsideration. Tr. 274–79, 281–86, 288–294, 296–302. During the COVID-19 crisis, the ALJ continued a March 2021 hearing so that plaintiff could obtain representation. Tr. 212–228. The ALJ conducted a telephonic hearing on March 11, 2022, and issued a decision on March 22, 2022. Tr. 30–51, 229–272.

The ALJ found that plaintiff met the insured status requirements through June 30, 2021, and had not engaged in substantial gainful activity since the date of the motorcycle accident on July 18, 2019. Tr. 33. The ALJ determined that plaintiff has the severe impairments of pelvic fracture, degenerative disc disease, bladder rupture, and hernias. *Id.* The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work with additional physical and postural restrictions. Tr. 37. The ALJ determined that plaintiff could not perform his past relevant work as a steel worker. Tr. 49. The ALJ found, however, that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. Tr. 50. The ALJ therefore found plaintiff to be not disabled. Tr. 51.

The Appeals Council admitted evidence submitted after the ALJ's March 2022 decision and denied plaintiff's request for review. Tr. 1–7, 13–26, 60–211. The ALJ's decision is therefore the Commissioner's final decision.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v.*

1  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Plaintiff has failed to demonstrate that the ALJ's

2  decision was not supported by substantial evidence or applied the wrong legal standard with

3  respect to (1) evaluating the medical evidence and the medical opinions of Drs. Magdaleno,

4  Hale, and Ritson; and (2) evaluating plaintiff's testimony about the severity of his impairments.

5  Moreover, the evidence presented to the Appeals Counsel does not demonstrate a factual or legal

6  error that would require a remand for the ALJ to consider it.

7        **1. Medical Evidence**

8        The ALJ considers the persuasiveness of medical opinions using five factors

9  (supportability, consistency, relationship with claimant, specialization, and other), but

10 supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2),

11 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds

12 a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors.

13 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain

14 how he or she considered the other remaining factors, unless the ALJ finds that two or more

15 medical opinions or prior administrative medical findings about the same issue are both equally

16 well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3),

17 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or

18 inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32

19 F.4th at 792.

20       Plaintiff has not shown that the ALJ failed to cite substantial evidence or committed

21 harmful legal error when evaluating the opinions of reviewing state agency physicians Drs.

22 Magdaleno and Hale and examining physician Dr. Ritson.

23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 3

### a. Reviewing State Agency Physicians Drs. Magdaleno and Hale

Plaintiff argues that the ALJ erred by relying on the opinions of state agency physicians Drs. Magdaleno and Hale to assess an RFC of light work within a year because contemporaneous and more recent evidence showed that plaintiff had suffered medical setbacks and continued physical limitations. Although his concerns are well-argued, plaintiff has not demonstrated that the ALJ committed reversible error by giving persuasive weight to the opinions of Drs. Magdaleno and Hale.

The ALJ found the opinions of Drs. Magdaleno and Hale to be persuasive because they were "consistent with the treatment records, as he had regained the ability to ambulate effectively within a year of his accident and generally reported improvement of his symptoms with treatment and physical therapy." Tr. 46. In reviewing the evidence on November 12, 2019, Dr. Magdaleno discounted plaintiff's symptom statements due to inconsistency with the overall evidence, specifically "in the ADL information, in that the claimant reports that he is able to walk short distances, prep simple meals, shop in stores, etc." Tr. 277. Dr. Magdaleno opined that by July 17, 2020—i.e., under a year after the alleged onset day of disability—plaintiff would be able to stand and/or walk, with normal breaks, for about 6 hours in an 8 hour workday. Tr. 277. Dr. Magdaleno noted that plaintiff appeared to be regaining the ability to ambulate effectively such that current evidence showed gradual improvement with good rehab potential after a month of physical therapy. Tr. 278. Dr. Magdaleno therefore concluded that he "[a]nticipate[d] *without unforeseen complications and continued recovery/rehab*, light RFC reasonable at one year from injury." Tr. 278 (emphasis added). On reconsideration, on reviewing the evidence on May 18, 2020, Dr. Hale noted that in February 2020, plaintiff underwent surgery for fusion of his right sacroiliac joint and revision of his open reduction and internal fixation; that in March 2020,

plaintiff remained non-weightbearing; and that his condition was expected to continue to improve with continued care. Tr. 289. While acknowledging this corrective surgery, Dr. Hale found that plaintiff would have the RFC to perform light work within one year of his alleged date of disability. In fact, Dr. Hale used the same verbatim language as Dr. Magdaleno, that he "[a]nticipate[d] without unforeseen complications and continued recovery/rehab, light RFC reasonable at one year from injury." Tr. 292.

Plaintiff argues that the problem with relying on the opinions of Drs. Magdaleno and Hale is that plaintiff encountered unforeseen complications, including revision surgery and extensive, inpatient rehabilitation services that, at very least, delayed his ability to light work past July 2020, i.e., beyond one year from his motorcycle accident. In December 2019 examination notes, physician's assistant Michelle Ann Cardenas noted that due to an x-ray and plaintiff's symptoms, plaintiff would need to follow up with a CAT scan and prepare for surgery. Tr. 985. In her opinion, this meant that plaintiff would be "nonweightbearing for 3 months postop then be limited activity for 6 months minimum." *Id.* Ms. Cardenas and Dr. Conor Kleweno, M.D., also signed a December 2019 letter to the same effect:

> It is my medical opinion that [claimant] is unable to work due to a pelvis injury that has displaced requiring another surgery due to fixation failure. He will be nonweightbearing for three months after the surgery. He will be limited activity use for 6 months post op at a minimum.

Tr. 974. Plaintiff's corrective surgery occurred in February 2020. Tr. 1137. Thus, plaintiff contends, according to Ms. Cardenas's opinion, plaintiff could return to non-limited activity in November 2020 rather than the July 2020 date opined by Drs. Magdaleno and Hale.

Plaintiff's contention is unpersuasive because the ALJ considered and discounted the opinions of Ms. Cardenas and Dr. Kleweno and cited other medical evidence in support of an

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 5

RFC of light work. After first noting that the ultimate determination of disability was one for the Commissioner, the ALJ discounted the opinions of Ms. Cardenas and Dr. Kleweno because they (a) provided short-term limitations related to the upcoming surgery; (b) did not refer to plaintiff's functioning over a period of more than twelve months; and (c) the assertion of "limited activity use" was vague and did not explain the nature or degree of those limitations. Tr. 46–47. The ALJ further noted that plaintiff had seen significant improvement within twelve months of the accident, both before and after the February 2020 corrective surgery. Tr. 48. For example, in October 2019, he was able to walk a mile, Tr. 898; in November 2019, he reported having traveled to Arizona to watch NASCAR races, Tr. 928; and on admission for revision surgery in February 2020 he was walking without use of an assistive device, Tr. 2019. Tr. 48. The ALJ noted that after months of rehabilitation in a nursing facility, plaintiff was discharged in May 2020 as able to ambulate independently with no assistance and with no pain while walking. Tr. 48, 2354. On July 15, 2020, plaintiff was "able to ambulate just fine." Tr. 2693; *see* Tr. 41. By August 24, 2020, plaintiff reported standing the whole day while fishing. Tr. 2590; *see* Tr. 41.

Although the ALJ found the opinions of Drs. Magdaleno and Hale persuasive, he did not do so in isolation but with reference to medical evidence that could reasonably be construed as suggesting that plaintiff had regained an RFC to perform light work some time before July 17, 2020. The Court finds that plaintiff cannot demonstrate that the ALJ gave too much weight to the opinions of Drs. Magdaleno and Hale, or failed to examine those opinions with respect to supportability, consistency, or substantial evidence.

### b. Examining Physician Dr. Ritson

Plaintiff contends that the ALJ did not properly consider the May 2021 opinion of examining physician Dr. Ritson. Although plaintiff has raised a plausible, alternative

1  interpretation of Dr. Ritson's opinion, he has failed to show that the ALJ committed reversible
2  factual or legal error.
3        The ALJ found Dr. Ritson's opinion, Tr. 1350–1388, to be unpersuasive for several
4  reasons. Tr. 47. First, the ALJ noted that to the extent Dr. Ritson opined that plaintiff was
5  unemployable at the present time and in the future, such a conclusion was reserved to the
6  Commissioner. Tr. 47. Second, the ALJ discounted Dr. Ritson's indication that plaintiff had
7  significant physical limitations with intolerance to prolonged standing and limitations of lifting
8  because (a) the opinion was "very vague, merely asserting the claimant had some limitations
9  with 'prolonged' sitting and lifting without specifying the exact degree of limitation"; (b) it was
10 "not entirely consistent with Dr. Ritson's examination of the claimant, where the claimant was
11 noted to have normal strength, be well muscled, and reportedly working out at the gym
12 regularly," as well as "claimant's self-reported ability to stand for an hour at a time during that
13 exam"; and (c) "[t]he treatment record documented significant improvement in the claimant's
14 functioning since his February 2020 surgery and physical therapy." Tr. 47.
15       Plaintiff contends that the ALJ erred by failing to acknowledge that Dr. Ritson's opinion
16 could be considered consistent with abnormal examination findings regarding pain and range of
17 motion. Dkt. 10, at 16. This is, however, only an alternative interpretation of the evidence. The
18 ALJ did not find that there were *no* examination findings consistent with Dr. Ritson's opinion;
19 rather, the ALJ found that Dr. Ritson's opinion was not "entirely consistent" with certain,
20 contradictory examination findings, as well as evidence that demonstrated a greater capacity to
21 stand and walk than opined by Dr. Ritson. *See* Tr. 47. The salient question is not whether the
22 ALJ *could have* interpreted Dr. Ritson's opinion in the manner proposed by plaintiff; the
23 question is whether the ALJ's decision to discount Dr. Ritson's opinion was supported by

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 7

substantial evidence.[1] The ALJ referenced substantial evidence when discounting Dr. Ritson's opinion.

The Court finds that the plaintiff has not demonstrated that the ALJ evaluated Dr. Ritson's opinion without citing substantial evidence or by misapplying the law.

**2. Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to give specific, clear, and convincing reasons for rejecting plaintiff's testimony about his inability to stand or walk for a prolonged period. Dkt. 10, at 9–14; *see Lambert v. Saul*, 980 F.2d 1266, 1277 (9th Cir. 2020). The Court disagrees.

The ALJ discounted plaintiff's symptom allegations because they were not entirely consistent with the evidence and his own testimony. Tr. 48–49. In his October 2019 functional report, in a May 2021 appointment with his physician, and at the March 2022 hearing, plaintiff stated that he no longer went fishing due to pain, lack of mobility, and the inability to stand for prolonged periods. Tr. 246, 599, 2755. Nonetheless, medical records show that plaintiff continued to fish, including in October 2019, September 2020, and May 2021. Tr. 1381, 2551, 2900. He reported fishing for an hour from the bank. Tr. 31. In August 2020, i.e., three months after discharge from corrective surgery, plaintiff reported standing all day to fish. Tr. 2590. Although plaintiff told his primary care physician that he was using a walker upon discharge

---

[1] Plaintiff states in the opening and reply briefs: "While Dr. Ritson did not explicitly state how long [claimant] could stand, it is reasonable to assume this meant [claimant] could be on his feet most of a work day as found by the ALJ." Dkt. 10, at 15; Dkt. 14, at 7. The Commissioner remarks that this admission means that plaintiff acknowledges that Dr. Ritson's opinion could reasonably be construed as supporting the ALJ's determination that plaintiff could stand for the six to eight hours necessitated by light work. Dkt. 13, at 7. The Court presumes that plaintiff meant to state that Dr. Ritson suggested that claimant could *not* be on his feet for most of a workday, contrary to the ALJ's determination. Otherwise, the Commissioner is correct: plaintiff would be arguing that the ALJ had not erred by construing Dr. Ritson's opinion as supportive of a capacity to perform light work.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

from rehabilitation in May 2020, the discharge records from May 2020 show that he was ambulatory without assistive devices and walking without pain. *Compare* Tr. 2350 *with* Tr. 2755. In November 2020, plaintiff reported having gone on a five-hour hike.[2] In January 2021, plaintiff had started work as a meat cutter with only mild soreness at the end of the day, requested steroids to help with muscle bulking, and declined physical therapy to work on muscle strengthening. Tr. 2642, 2647. In May 2021, plaintiff told examining physician Dr. Ritson that he "can walk a mile and feel okay and has not pushed beyond that" and that he took Tylenol about once a week. Tr. 1380–81. In late-2021, plaintiff was regularly lifting heavy free weights in a gym and developed a hernia due "heavy lifting/ab exercises." Tr. 2916; *see* Tr. 2918, 2924, 2930.

        The ALJ reasonably cited plaintiff's ability to go on a long hike, stand all day while fishing, and lift heavy weights as reasons for discounting his testimony of having far more severe restrictions in walking, standing, and lifting. Plaintiff's arguments to the contrary are either alternative explanations or speculative. Dkt. 10, at 9–14. For example, plaintiff suggests that perhaps the note about going on a five-hour hike was merely a typo, or that perhaps when plaintiff referred to not being able to fish, what he really meant was that he was not able to fish in the way he once did. Such suggestions do not undermine the ALJ's reasonable interpretation that such symptom testimony was inconsistent with the severity of restrictions to which he

---

[2] Plaintiff is correct that the ALJ referred to plaintiff having gone on a "five mile hike," Tr. 49, when the notes actually refer to a "5 hour[] hike," Tr. 2712. In either case, such activity would undermine plaintiff's testimony that his capacity to walk for a prolonged period is severely compromised. A five hour hike might suggest *ten miles* of hiking. *See* Amber Sayer, "What's An Average Hiking Speed? + How To Estimate Hike Speed", *Marathon Handbook* (last updated November 22, 2022) (noting that British walking community *Ramblers* stated an average hiking speed of 2.5 mph but that 2 mph "is a better estimate for most people"), *located at* https://marathonhandbook.com/average-hiking-speed/ (last accessed Sept. 19, 2023).

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 9

testified. Plaintiff argues that the ALJ should have given more weight to the fact that plaintiff's unsuccessful work attempt as a meat cutter occurred due to his inability to stand for a prolonged period of time. Plaintiff supports this proposition, however, only through his own testimony and statements made to medical providers, and the ALJ cited substantial evidence to discount this subjective testimony.

The ALJ cited specific, clear, and convincing reasons for rejecting plaintiff's testimony about his inability to stand or walk for a prolonged period. The Court finds that plaintiff has not demonstrated that the ALJ failed to support the decision to discount his symptom testimony with substantial evidence or misapplied the law.

**3. Evidence Submitted to Appeals Council**

Plaintiff contends that a remand is necessary so the ALJ may consider evidence that he submitted for the first time to the Appeals Council. *See* Tr. 2, 13–26, 60–211. Plaintiff argues that two pieces of evidence necessitate remand: a more detailed medical source statement from his physician Dr. Xandra Rarden, M.D., which stated that because of Mr. Snyder's multiple injuries he would not be able to stand more than sixty minutes at a time and more than three hours in an eight-hour day, and that he would need to lie down during the day and would be absent from work, Tr. 23–26 (also Dkt. 10-1, at 1–4); and a lay statement from his girlfriend, Teala Faulconer, who confirmed plaintiff's symptom testimony by stating he could not walk or stand or perform any activities for more than thirty minutes before needing to take a break, Tr. 13–17 (also at Dkt. 10-2, at 1–5).

Plaintiff has not challenged the ALJ's reasons for discounting Dr. Rarden's original opinion such that he cannot show that this similar opinion would result in a different result. Tr. 47. Moreover, it is clear that Dr. Rarden relied on statements inconsistent with the record (such

as plaintiff using a walker after being discharged in May 2020 and not being able to fish) that would demonstrate that the ALJ's decision to discount Dr. Rarden's opinion was supported by substantial evidence. Similarly, were the ALJ to consider the lay statement of Ms. Faulconer, it could be discounted for the reasons plaintiff's symptom testimony was discounted.

The Court finds that plaintiff has failed to demonstrate that it is appropriate to remand for the ALJ to consider evidence submitted post-decision that the Appeals Council found to be unpersuasive.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 21st day of September, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge